1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  JOAQUIN MURRIETTA MARTINEZ,          Case No.:  13-cv-1457-BTM (WVG)

12                          Petitioner,

13  vs.                                   **FINAL REPORT AND**
                                          **RECOMMENDATION OF UNITED**
14  JEFFREY BEARD, Secretary,             **STATES MAGISTRATE JUDGE ON**
                                          **PETITION FOR WRIT OF HABEAS**
15                          Defendant.     **CORPUS**

16

17

18  **I.    INTRODUCTION**

19         Petitioner Joaquin Murrietta Martinez ("Petitioner"), a California state prisoner

20  proceeding pro se, has filed this petition for a writ of habeas corpus, challenging his first

21  degree murder conviction entered in San Diego County Superior Court. The case has been

22  referred to this Court pursuant to Civil Local Rule 72.1(d)(4) for prepared findings of fact

23  and recommendation for disposition. For the reasons discussed below, the Court

24  RECOMMENDS that the petition be DENIED in its entirety WITH PREJUDICE.

25                                        1

26                                                          13-cv-1457-BTM (WVG)

27

28

## II.   FACTUAL AND PROCEDURAL HISTORY

### A. Trial

This Court gives deference to state court findings of fact and presumes them to be correct; a habeas petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The following facts are taken from the California Court of Appeal slip opinion denying Petitioner's direct appeal:

> Martinez, a homeless drug addict, accepted an invitation from Hardoy to move into a house she leased in Oceanside, where several other previously homeless drug addicts also resided. Martinez and Hardoy had a sexual relationship for a few months, but that ended when Lisa Brown moved into the house and Martinez began having sex with her.  Over the next several months, various drug addicts moved in and out, the atmosphere became increasingly negative and hostile, and the premises degenerated into a flophouse for persons addicted to methamphetamine or heroin.

> The financial situation of those living at Hardoy's house also gradually deteriorated.  When Hardoy exhausted her inheritance and could no longer pay the rent or other bills, Martinez began robbing banks with Brown, Joseph Cooper and others living at the house to pay the household bills and support their drug habits.   Hardoy knew about these bank robberies, and she periodically argued with Martinez and threatened to report them to the police.

> The last of these arguments was overhead by Yesenia Green, an acquaintance of Martinez.  Martinez left the house with Green and her friend because of the argument.  When Green and her friend drove Martinez back to Hardoy's house a few hours later, Green's friend said to Martinez, "Okay. We'll be back." Martinez responded, "Okay.  But by the time you guys get back, the bitch will be dead."

> A few days later, Martinez and Brown met Cooper and others at a motel.  Cooper told Martinez they needed to go back to Hardoy's house to retrieve some things, but Martinez told Cooper they could not go to the house

2

because Hardoy's corpse was there.  Martinez also said he needed Cooper to help him dispose of the corpse, and Cooper agreed to do so.

Martinez then drove Cooper and Brown back to Hardoy's house. Cooper testified that on the way there, Brown told him Martinez had "poisoned" Hardoy, but when Hardoy did not die right away Martinez smothered her with a pillow. [FN 1: Martinez testified at trial that he "[did]n't remember ever hearing" Brown say he smothered Hardoy with a pillow; he also denied killing Hardoy, but admitted injecting her with heroin. Toxicological tests performed on Hardoy's remains revealed methamphetamine and morphine, a metabolite of heroin.  The tests were negative for the anticoagulants contained in poisons commonly used for pest control.] Brown also said Martinez killed Hardoy because she was a "rat" who had threatened "to call the cops." [FN 2: On cross-examination, Martinez admitted Hardoy had "threatened to call the cops on [him]" and described her as a "yapping chihuahua."  He also testified that if he ever encountered a "snitch" in prison, he would stab the "snitch" in the neck.]  According to Cooper, as Brown related these facts Martinez "didn't do anything.  He kept driving.  He just kind of nodd[ed] his head and was kind of pretty serious about getting what had to be done, done, which was getting rid of the body."

When Martinez, Brown and Cooper arrived at Hardoy's house, they went to a bedroom where Hardoy's corpse lay across the bed.  Martinez testified he wanted to dismember Hardoy's corpse so that it could not be identified and traced back to the bank robberies.  He therefore "took out the dental records" by bashing the corpse's face with a baseball bat and using a machete "to be sure that the teeth were all knocked [out]."  To eliminate fingerprints and footprints, Martinez used the machete to chop off Hardoy's hands, and Cooper used it to chop off her feet.  Martinez wrapped the dismembered hands and feet in plastic bags and stuffed them into a backpack; he and Cooper wrapped the rest of the Hardoy's corpse in blankets and stuffed it into a duffel bag.  Martinez and Cooper discarded the duffel bag in a dumpster in Escondido.  Brown discarded the backpack in a dumpster in Vista.

While Cooper was testifying at trial, the prosecutor asked him what Brown had told him during the ride from the motel to Hardoy's house about

3

13-cv-1457-BTM (WVG)

how Hardoy died.  Martinez's counsel objected the question for called for hearsay.  The trial court overruled the objection, and Cooper testified as stated [above].

After Cooper testified at trial, Martinez's counsel advised the court that Brown was available to testify and that he intended to call her as a witness the following day.  The court stated that it did not know why Brown had not been charged in the case and that she would need an attorney to advise her about testifying because her testimony might expose her to criminal liability.  The prosecutor advised the court that Brown had been charged with being an accessory after the fact and had served a prison sentence for conviction on that charge.  The prosecutor also stated that in doing research for the case, he had learned that someone may be charged with both being an accessory after the fact and aiding and abetting a murder.  Martinez's counsel agreed to arrange for Brown to meet with an attorney and to appear in court the following day.

Brown appeared in court the next day and, to the recommendation of her attorney, asserted her Fifth Amendment privilege against self-incrimination.  Based on this assertion, the trial court ruled Brown could not be called as a witness and excused her.  Brown and her counsel exited the courtroom.

The trial court then allowed Martinez's counsel "to make a record regarding [Brown]."  Counsel argued the People's decision to charge Brown with being an accessory after the fact and her service of the sentence for that crime estopped the People from subsequently charging Brown with Hardoy's murder.  He also argued Brown was "a vital witness for the defense."  Martinez's counsel stated that his "understanding from the reports and from speaking to [his] investigator" was that Brown's testimony "would have been radically different from what [Cooper] said."  According to counsel, Brown would deny she told Cooper that Martinez "said he smothered the victim... [or] poisoned the victim or anything of the sort"; would "attack [Cooper's] statements about her being present at the time that the body was chopped up"; and would testify that Cooper "is a great big fat liar." [FN 3: In his opening brief, Martinez also asserts: "Brown would also have confirmed just who was driving the car that night: Martinez, as Cooper claimed, or Brown herself, as

4

13-cv-1457-BTM (WVG)

Martinez claimed.  To the degree Brown would have confirmed Martinez's version, his credibility would have been bolstered and Cooper's diminished." Martinez, however, does not provide any record citation in support of this assertion.  Our review of the record revealed that in his offer of proof, Martinez's trial counsel made no mention of any expected testimony from Brown as to who was driving the car.] Counsel concluded by asserting that Brown had given three or four interviews in which "she didn't change her story" and "would have been a solid witness for the defense."

In response to the arguments of Martinez's counsel, the trial court stated that in light of the testimony introduced at trial, Brown "could have absolutely been charged as aiding and abetting the death of [Hardoy]."  The court also noted that Brown could face criminal liability if she had lied in any of her statements to the police, and that "there are also some potential federal charges."  The court stated it "was not comfortable putting [Brown] on the stand without getting counsel to advise her regarding any Fifth Amendment aspects of her testimony."

The prosecutor also made some statements for the record.  He reminded the court there is no limitations period for murder.  He also stated: "And the People are not precluded... from charging the crime in which the proof is the strongest first"; Brown "remains a suspect in this murder"; and "it's not over. We're just looking for one additional [piece of] corroborative evidence and charges could be filed.  I just don't know.  It depends on the state of the evidence."

After the jury found him guilty, Martinez renewed and expanded his arguments concerning the need for Brown's testimony in a motion for new trial.  He argued the trial court "erred in the decision of [a] question of law arising during the course of the trial" when it excused Brown from testifying based on her assertion of her Fifth Amendment privilege. (§ 1181, subd. 5.) Martinez also asserted, without supporting factual or legal analysis, that the court "should have either ordered the [P]eople to grant [Brown] immunity or suggested the use of her hearsay statements in this case."  The People, of course, opposed the new trial motion; and the court denied it. (Doc. No. 22-22 at 2-7.)

5

13-cv-1457-BTM (WVG)

**B. <u>Direct Appeal</u>**

On August 4, 2011, Petitioner filed a direct appeal of his conviction in the California Court of Appeal, Fourth Appellate District, Division One. (Doc. No. 22-20.) Petitioner challenged his conviction on four grounds, each related to Brown's unavailability as a witness.  First, Petitioner argued that the trial court erred in permitting Brown to invoke the Fifth Amendment and refuse to testify. (<u>Id.</u>) Second, Petitioner argued that the prosecutor committed misconduct by threatening to charge Brown with murder but not granting her use immunity. (<u>Id.</u>) Third, Petitioner argued that the trial court should have granted Brown "judicial immunity." (<u>Id.</u>) Finally, Petitioner argued that his trial counsel was ineffective for not seeking to admit the statements Brown made to a defense investigator under California Evidence Code Section 1202, an exception to the California hearsay rule. (<u>Id.</u>) The state appellate court affirmed Petitioner's conviction in a fully reasoned opinion issued on September 6, 2012. (Doc. No. 22-22.) Petitioner filed his Petition for Review in the California Supreme Court on October 15, 2012. (Doc. No. 22-23.) That court denied the Petition for Review in a summary decision issued on December 19, 2012. (Doc. No. 22-24.)

**C. <u>Federal Habeas Corpus Petition</u>**

On June 24, 2013, Petitioner filed his Petition for Writ of Habeas Corpus in federal court seeking relief under 28 U.S.C. § 2254. (Doc. No. 1.) The District Court dismissed the Petition on July 8, 2013, for failure to satisfy the filing fee requirement, failure to name a proper respondent and failure to allege exhaustion of state court remedies. (Doc. No. 2.) Petitioner filed his First Amended Petition for Writ of Habeas Corpus ("FAP") on August 19, 2013. (Doc. No. 3.) Petitioner also filed a motion to proceed in forma pauperis, which

6

the District Court granted. (Docs. No. 4 and 5). Respondent answered the FAP on December 27, 2013. (Doc. No. 21.)

On January 2, 2014, this Court notified Petitioner that the FAP was subject to dismissal because it contained both exhausted and unexhausted claims.  (Doc. No. 23.) Petitioner did not remedy this defect, and, on May 20, 2014, this Court issued a Report and Recommendation ("R&R") which recommended that the FAP be dismissed without prejudice to Petitioner refiling an amended petition which contained only exhausted claims. (Doc. No. 33.) On August 19, 2014, Petitioner filed a Motion to Amend ("MTA") asserting five additional claims and a Motion for Stay and Abeyance.  (Docs. No. 37 and 39.)

On October 16, 2014, the District Court issued an order declining to adopt the R&R. (Doc. No. 40.) In its order, the District Court noted that this Court had not addressed Respondent's contention that the unexhausted claims in the FAP should be denied with prejudice under 28 U.S.C. § 2254(b)(2). (Id. at 3.) The District Court also noted that this Court had not addressed whether the claims not raised in state court should be considered technically exhausted because any further state filings would be procedurally barred. (Id.)

On December 30, 2014, the District Court issued an Order granting Petitioner's MTA. To avoid delay, the District Court consolidated the FAP and the MTA and ordered that these two documents constituted the operative pleading in this action.[1] (Doc. No. 50 at 2.) The Court denied Petitioner's Motion for Stay and Abeyance as moot, finding that the claims not presented on direct appeal were technically exhausted and procedurally

---

[1] On February 17, 2015, Petitioner filed a Second Amended Petition for Writ of Habeas Corpus, which, with the exception of the the cover sheet, was an exact duplicate of the MTA and did not add any new claims.  (Doc. No. 55.)

7

13-cv-1457-BTM (WVG)

defaulted due to Petitioner's failure to present them to the state court in a timely manner. (Id.)

On March 18, 2015, Respondent answered the claims asserted in the MTA. (Doc. No. 60.)  Petitioner did not file a traverse.

## IV.   **PETITIONER'S CONTENTIONS**

Petitioner asserts eight grounds for relief. The first three grounds for relief were presented in the FAP. (Doc. No. 3.) The remaining five grounds for relief were asserted in the MTA. (Doc. No. 37.)

<u>First</u>, Petitioner claims that his trial counsel was ineffective for failing to seek the admission of Brown's statement to a defense investigator under California Code of Evidence section 1202. (Doc. No. 3 at 6.) Petitioner incorporates by reference, and relies entirely on, the first section of his argument in the Petition for Review filed in the California Supreme Court. (Doc. No. 22-23, at 14-33.)

<u>Second</u>, Petitioner claims that his rights under the Sixth and Fourteenth Amendments were violated by the trial court's failure to grant Brown immunity. (Doc. No. 3 at 7.) Petitioner incorporates by reference, and relies entirely on, the second section of his argument in the Petition for Review filed in the California Supreme Court. (Doc. No. 22-23, at 34-38.)

<u>Third</u>, Petitioner claims that his trial counsel rendered ineffective assistance by failing to make use of letters allegedly provided to counsel by Petitioner purportedly showing that "several people made false claims [or] recanted outright!"  (Doc. No. 3 at 8-9.)

<u>Fourth</u>, Petitioner claims that his Fifth and Sixth Amendment rights were violated because the jury was shown a videotaped statement he made to the police and because he

8

was forced to take the stand at trial to respond to that statement. (Doc. No. 37, at 3-5.)

<u>Fifth</u>, Petitioner claims that his appellate counsel rendered ineffective assistance by failing to raise the Fifth and Sixth Amendment claims identified in Petitioner's fourth ground for relief. (<u>Id.</u> at 6.)

<u>Sixth</u>, Petitioner argues that his trial counsel was ineffective for failing to seek the admission of medical records documenting a stroke that Petitioner suffered at age eight. (<u>Id.</u> at 6.)

<u>Seventh</u>, Petitioner argues that statement he made to Homero Hernandez were inadmissible hearsay and that their admission violated his rights under the Confrontation Clause of the Sixth Amendment. (<u>Id.</u> at 8.)

<u>Eighth</u>, Petitioner argues that his prosecution was arbitrary and discriminatory. (<u>Id.</u> at 9.)

## V.    <u>STANDARD OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), applies to all habeas corpus petitions filed in federal court after April 24, 1996. <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997). This Petition was filed after that date and so is governed by AEDPA.

Under AEDPA, a federal court may grant relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas petition will not be granted with respect to any claim "adjudicated on the merits" in state court unless that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light

13-cv-1457-BTM (WVG)

of the evidence presented at the state court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). A state court decision is an "unreasonable application" of federal law only if the state court identified the governing legal principles from Supreme Court decisions but unreasonably applied those principles to the facts of the prisoner's case." <u>Id.</u> at 413. To warrant habeas relief, a state court's decision must be more than merely erroneous or incorrect—it must be "objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003); <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).

When the state supreme court denies a prisoner's claim in a summary opinion, the federal habeas court "looks through" to the last "reasoned decision" in state court denying the prisoner's claim and evaluates that decision under the Section 2254(d) standards. <u>Brumfield v. Cain</u>, 135 S.Ct. 2269, 2276 (2015) (citing <u>Johnson v. Williams</u>, 133 S.Ct. 1088, 1094, n. 1 (2013), and <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 806 (1991)). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim and the failure of the state courts to explain why they have denied the prisoner relief does not extinguish the presumption that the state courts have adjudicated the claim on the merits. <u>Harrington v. Richter</u>, 562 U.S. 86, 99 (2011); <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

The only source of "clearly established federal law" under AEDPA is "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412. Circuit precedents may in some cases function as "persuasive authority," but only "for purposes of determining whether a state

10

1   court decision is an 'unreasonable application'" of clearly established Supreme Court law.

2   Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

3          The prisoner has the burden of proving the facts underlying his claims by the

4   preponderance of the evidence. Silva v. Woodford, 279 F.3d 825, 835 (9th Cir. 2002).

5   **VI.   DISCUSSION**

6          **A. Ground One: Ineffective Assistance of Counsel**

7          The Court first considers Petitioner's claim that his trial attorney was ineffective for

8   failing to seek the admission under California Code of Evidence section 1202 of Brown's

9   statement to a defense investigator. This ineffective assistance of counsel ("IAC") claim

10  was rejected by the California courts on direct appeal. To prevail on this claim, therefore,

11  Petitioner must show that the California courts' rejection of this claim was contrary to or

12  an unreasonable application of the clearly established federal law as determined by the

13  Supreme Court. 28 U.S.C. § 2254(d); Early, 537 U.S. at 7-8.

14         As an initial matter, this Court finds that Petitioner fairly presented this IAC claim

15  to the California Supreme Court and in his habeas corpus filings in this Court. Respondent

16  contends that Petitioner "abandoned" this IAC claim in the California Supreme Court and

17  points out that the Petition for Review "reli[ed] entirely on state law" and "fail[ed] to cite

18  the federal constitution or other federal authorities." (Doc. No. 60-1.) As Respondent

19  frames it, this claim raises only a state law point of evidence, and therefore fails to state a

20  federal claim cognizable under AEDPA.

21         This Court disagrees with Respondent's framing of this claim and finds that

22  Petitioner asserted a federal IAC claim in both his Petition for Review in the California

23  Supreme Court and in the FAP. The Petition for Review filed in the California Supreme

24  Court does indeed focus on the Court of Appeal's ruling on the state law evidentiary

25

26                                              11

27

28                                                              13-cv-1457-BTM (WVG)

question that underlies the IAC claim. However, the Petition for Review makes clear that Petitioner's appeal lay from the Court of Appeal's ruling rejecting the IAC claim as well as from the subsidiary reasoning addressing the scope of Section 1202:

> The Court of Appeal rejected [Petitioner's] claim that his counsel provided ineffective assistance of counsel for failing to argue the admissibility of Brown's statements under section 1202. In so ruling, the Court of Appeal reasoned that 1) section 1202 does not apply to adoptive admissions … 2) section 1202 does not apply because it references the testimony of the 'declarant'…; and 3) the defense did not need the statements of Brown … In what appellant believes to be a question of first impression, he challenges as erroneous each of the court's conclusions.

(Doc. No. 22-23 at 17-18) (emphasis added). Petitioner also provided a detailed factual and procedural basis for the claim, including the express contention that his trial attorney never sought the admission of Brown's statement. It is true that Petitioner does not specify the federal nature of his IAC claim. However, the standards governing IAC claims under California and federal law are identical, Cal. Const., Art. 1, § 24,  and, as such, the failure to cite federal authorities is not fatal. This Court accordingly finds that this IAC claim has been exhausted through fair presentation to California's highest court and properly raised in the instant habeas corpus proceeding.

Turning to the merits, however, it is clear that relief is not warranted on this IAC claim. Petitioner contends that Brown's statement was admissible under California Evidence Code section 1202 as an exception to the rule against hearsay and that counsel's failure to offer this statement in evidence constituted ineffective assistance. The California Supreme Court denied Petitioner's Petition for Review in a summary opinion. This Court therefore looks through to the opinion of the California Court of Appeal to determine

13-cv-1457-BTM (WVG)

1  whether that decision was contrary to or an unreasonable application of clearly established

2  federal law, as determined by the Supreme Court. Brumfield, 135 S.Ct. at 2276.

3  　　The Court of Appeal held that "Brown's statements to the defense investigator

4  contradicting those Cooper said she made concerning Hardoy's murder were not

5  admissible under Evidence Code section 1202" and that "Martinez's trial counsel therefore

6  was not ineffective in failing to seek their admission on that basis." (Doc. No. 22-22 at 28.)

7  The court's determination regarding the scope of Section 1202 is purely a state law matter

8  and so is not before this Court. 28 U.S.C. § 2254(a) (a state prisoner is entitled to federal

9  habeas relief "only on the ground that he is in custody in violation of the Constitution or

10  laws or treaties of the United States"); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)

11  ("[F]ederal habeas relief does not lie for errors of state law.").

12  　　The second part of the court's ruling, on the other hand, is an adjudication of the

13  merits of Petitioner's federal IAC claim, and this Court reviews that decision to determine

14  whether it was either contrary to or an unreasonable application of clearly established

15  federal law. 28 U.S.C. § 2254(d). The clearly established law for federal IAC claims is the

16  two step analysis outlined by the Supreme Court in Strickland v. Washington, 466 U.S.

17  668 (1984), and its progeny. Under Strickland, a prisoner asserting an IAC claim must

18  show (1) that counsel's performance fell below an objective standard of reasonableness,

19  under prevailing norms of practice, and (2) that the defendant was prejudiced, in the sense

20  that he would have received a more favorable result but for counsel's unprofessional errors.

21  Id. at 687. Review of counsel's performance is highly deferential and a petitioner must

22  overcome the strong presumption that counsel's conduct fell within the wide range of

23  reasonable representation. Yarbrough v. Gentry, 540 U.S. 1, 5-6 (2003).

24

25

26  13

27  13-cv-1457-BTM (WVG)

28

In this case, the Court of Appeal's denial of Petitioner's IAC claim was a reasonable application of <u>Strickland</u>. The court's ruling that Brown's statement was not admissible under Evidence Code section 1202 and the absence of contrary precedent[2] strongly indicates that any attempt by trial counsel to admit Brown's statement under Evidence Code section 1202 would have been futile. At the very least, the failure to make an argument which was later rejected by the Court of Appeal and which, even ex ante, lacked a solid basis in the law of evidence, cannot be said to be objectively unreasonable. <u>See Rupe v. Wood</u>, 93 F.3d 1434, 1445 (9th Cir. 1996) (counsel's failure to take futile action is not deficient performance); <u>Shah v. United States</u>, 878 F.2d 1156, 1162 (9th Cir. 1989). Applying the deferential standard mandated by AEDPA, this Court finds that the Court of Appeal's denial of Petitioner's IAC claim was a reasonable application of <u>Strickland</u>.

For these reasons, this Court RECOMMENDS that Plaintiff's claim that his trial counsel rendered ineffective assistance by failing to seek the admission under California Code of Evidence section 1202 of Brown's statement to a defense investigator be DENIED WITH PREJUDICE.

### B. <u>Ground Two: The Trial Court's Failure to Grant Immunity to Brown</u>

The Court next considers Petitioner's argument that the trial court's failure to grant Brown immunity violated Petitioner's right to a fair trial. (Doc. No. 3 at 7, 46-50.)  Because

---

[2] Notably, Petitioner's Petition for Review in the California Supreme Court concedes that Petitioner's argument concerning the scope of Evidence Code section 1202 presents "a question of first impression" in that court. (Doc. No. 22-23, at 18.) The Petition for Review also allows that the two California appellate decisions, <u>People v. Corella</u>, 122 Cal.App.4th 461 (2004), and <u>People v. Baldwin</u>, 189 Cal.App.4th 991 (2010), cited to bolster Petitioner's expansive reading of Evidence Code section 1202 support Petitioner's argument only by "parity of reasoning." (<u>Id.</u> at 19.) This Court has examined these two cases and they are, indeed, not directly on point.

13-cv-1457-BTM (WVG)

the California Supreme Court denied review in a summary opinion, this Court looks through to the Court of Appeal's fully reasoned decision rejecting this claim to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. Brumfield, 135 S.Ct. at 2276.

The Court of Appeal rejected Petitioner's argument, finding that there was "no California statute or case authorizing a trial court to grant immunity to a witness when not requested to do so by the prosecutor." (Doc. No. 3 at 72.) The court noted that even if the court had the inherent power to grant immunity, this case would not meet the criteria because Brown's expected testimony was neither clearly exculpatory nor essential. (Id. at 74.) The court noted that even when a witness's testimony is clearly exculpatory and essential, a court may not grant use immunity if "strong governmental interests... countervail against a grant of immunity" and the record here supports legitimate reasons for not granting Brown use immunity. (Id. at 75.) The court found that "the trial court had no power to grant Brown use immunity even if Martinez had asked it do so, and would have had to deny any motion requesting such immunity." (Id. at 76.)

Respondent is correct that there is no Supreme Court authority addressing whether and in what circumstances a trial court must compel the prosecution to grant immunity to a defense witness. Petitioner identifies several federal Court of Appeals decisions indicating that prosecutorial misconduct may, in limited circumstances, require a court to grant a witness immunity. (Doc. No. 3 at 46-50, citing United States v. Westerdahl, 945 F.2d 1083, 1086-87 (9th Cir. 1991); United States v. Anguilo, 897 F.2d 1169, 1190-92 (1st Cir. 1990); United States v. Herrera-Medina, 853 F.2d 565, 568 (7th Cir. 1988)). However, the only source of clearly established federal law under AEDPA are the decisions of the Supreme Court. Williams, 529 U.S. at 412. Petitioner does not identify, and this Court is

15

13-cv-1457-BTM (WVG)

not aware of, any Supreme Court precedent establishing the constitutional right that Petitioner asserts. This being the case, this claim must fail.

This Court therefore RECOMMENDS that Petitioner's claim that his right to a fair trial was violated by the trial court's failure to grant Brown immunity be DENIED WITH PREJUDICE.

## C. Ground Three: Ineffective Assistance of Counsel

In his third ground for relief, Petitioner raises an IAC claim in which he contends that trial counsel failed to make appropriate use of letters allegedly showing that "several people made false claims [or] recanted outright!" (Doc. No. 3 at 8-9.) Respondent argues that this IAC claim is unexhausted and entirely without merit. (Doc. No. 60-1, at 12-13.)

### 1. Procedural Default

This IAC claim is procedurally defaulted because Petitioner has not exhausted his state court remedies in regard to this claim and a return to state court would now be barred by California's rule against untimely petitions. Petitioner has not shown cause for his default and prejudice, or, alternatively, that failure to review this claim will cause a fundamental miscarriage of justice. This IAC claim is therefore procedurally barred.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). A state prisoner exhausts his remedies by "fairly present[ing] his claim in each appropriate state court … thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004). This "rule of comity reduces the friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to

16

correct the constitutional violation in the first instance." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

Where a federal claim has not been exhausted in the state courts <u>and</u> where no further state remedies are available due to the action of an adequate and independent state procedural rule, the prisoner's claim is considered technically exhausted. <u>Gray v. Netherland</u>, 518 U.S. 152, 162 (1996) (noting that the exhaustion requirement "refers only to remedies still available at the time of the federal petition [and] is satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law"); <u>Cassett v. Stewart</u>, 406 F.3d 614, 621 n. 5 (9th Cir. 2005). A federal habeas court, however, will generally not grant relief on a claim that would be barred in state court on independent and adequate state procedural grounds. <u>Casey v. Moore</u>, 386 F.3d 896, 920 (9th Cir. 2004). Accordingly, "[t]he same procedural bar that exhausted [the prisoner's] claims (by making it impossible for him to fairly present his federal claims in state court) also renders the federal claims unavailable for [federal court] review." <u>Id.</u> at 921. This rule is subject to exceptions in cases in which the prisoner demonstrates cause for the procedural default and resulting prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).

California's timeliness rule constitutes an independent and adequate state procedural rule that generally prevents a federal court from reaching the merits of a prisoner's claim. <u>Walker v. Martin</u>, 562 U.S. 307, 311 (2011). Unlike most states, California does not employ fixed time limits for the filing of collateral relief applications. Instead, the California Supreme Court has instructed that "a [habeas] petition should be filed as promptly as the circumstances allow." <u>In re Clark</u>, 5 Cal.4th 750, 765 n. 5 (1993). In non-capital cases, prisoners seeking habeas relief have "the burden of establishing either (i)

17

absence of substantial delay, as measured from the time the [prisoner] or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim,  (ii) good cause for the delay, or (iii) that the claim falls within an exception to the bar of untimeliness." In re Robbins, 18 Cal.4th 770, 780 (1998). Exceptions to the bar of untimeliness occur in the case of a "fundamental miscarriage of justice," which, under California law, occurs where (i) an error of constitutional magnitude led to a trial that was so fundamentally unfair that, absent the error, no reasonable judge or jury would have convicted the petitioner; (ii) the petitioner is actually innocent of the crimes of which he or she was convicted; (iii) the death penalty was based on a profile of the petitioner so grossly misleading that, absent the error or omission, no reasonable judge or juror would have imposed the sentence of death; or (iv) the petitioner was convicted or sentenced under an invalid statute. Id. at 780-81.

Petitioner never presented this IAC claim in state court and over four and a half years have now elapsed from the date on which Petitioner first knew of the basis for this claim.[3] This four and a half year delay constitutes "substantial delay" under California law. See Walker, 52 U.S. at 317 (noting that it was "altogether plain that [petitioner's] delay of nearly five years ranked as 'substantial'"); see also In re Tsaturyan, 2002 WL 1614107 *3 (Cal.App., July 23, 2002) (delay of 16 months barred claim). Further, Petitioner cannot show good cause for this delay.  Petitioner asserts that he is "special ed" and has difficulty

---

[3] The basis of this IAC claim is that Petitioner's trial counsel did not investigate or make use of certain letters allegedly provided to him by Petitioner. Accordingly, Petitioner had knowledge of the factual basis for this claim at the time of his trial, which concluded with Petitioner's sentencing on January 28, 2011. Petitioner's "time to file" clock under California law started to run no later than that date. See Robbins, 18 Cal.4th at 780.

13-cv-1457-BTM (WVG)

reading and spelling. (Doc. No. 3, at 5.) But while Petitioner's filings in this matter demonstrate some difficulty with spelling, Petitioner has not documented a learning disability that would render him unable to understand or meet filing deadlines. Cf. Yow Ming Yeh v. Martel, 751 F.3d 1075, 1078  (9th Cir. 2014) (noting that to constitute an extraordinary circumstance justifying equitable tolling of the AEDPA statute of limitations a prisoner's mental impairment must render the prisoner unable to understand the importance of a timely filing or unable to prepare and effectuate a filing). Petitioner also asserts that certain claims raised in his petition were not raised on direct appeal due to ineffective assistance of counsel. (Doc. No. 37, at 10.) Even assuming that Petitioner's appellate counsel was ineffective, however, this would not explain Petitioner's failure to raise this IAC claim, as well as the claim that his appellate counsel was ineffective, in a state collateral proceeding. Petitioner accordingly has not shown good cause to excuse this delay. Finally, this IAC claim does not fall within any of the exceptions to the California timeliness bar in that Petitioner has made no showing of actual innocence or that absent the asserted constitutional error no reasonable jury could have convicted him, nor has Petitioner argued that he was sentenced under an invalid statute. Robbins, 18 Cal.4th at 780-81. This IAC claim therefore satisfies the technical requirements of exhaustion. However, the state untimeliness rule that prevents Petitioner from raising his federal claims in state court also acts as an independent and adequate procedural bar that causes Petitioner's claims to be defaulted—and therefore unreviewable—in this Court.

Petitioner's state procedural default can only be excused in this Court if Petitioner shows cause for the default and prejudice as a result, or that failure to consider the claim will result in a fundamental miscarriage of justice. "Cause for a  procedural default exists where 'something external to the petitioner, something that cannot fairly be attributed to

19

him[,]... impeded [his] efforts to comply with the State's procedural rule." <u>Maples v.</u> <u>Thomas</u>, 132 S. Ct. 912, 922 (2012). To demonstrate prejudice, a prisoner must show that he suffered "actual prejudice as a result of the alleged violation of federal law." <u>Coleman</u>, 501 U.S. at 750.

Here, Petitioner has not established cause to excuse his procedural default. As already discussed, Petitioner attempts to explain his procedural default by asserting that he is "special ed" and has difficulty reading and writing and by asserting that his appellate counsel was ineffective. The unsupported assertion of "special ed" status, however, is insufficient to establish cause for Petitioner's substantial delay in bringing this matter before the state courts. <u>See</u> <u>Schneider v. McDaniel</u>, 674 F.3d 1144, 1153-54 (9th Cir. 2012) (neither illiteracy nor mental defect with an adverse effect no more severe than illiteracy will excuse procedural default). Petitioner's conclusory assertion of an IAC claim also fails to establish cause because any deficiency attributed to Petitioner's appellate counsel would not explain Petitioner's failure to exhaust through state collateral proceedings both this underlying IAC claim and the claim that his appellate counsel was ineffective. <u>See</u> <u>Edwards</u> <u>v. Carpenter</u>, 529 U.S. 446, 451 (2000) (holding that an IAC claim may only used to establish cause for a procedural default if it has been presented to the state courts in the manner that state law requires). Denial of relief on this IAC claim also will not result in a fundamental miscarriage of justice because, as discussed below, this IAC claim is wholly without merit.

Because Petitioner has not shown cause and prejudice or that denial of this claim on procedural grounds will cause a fundamental miscarriage of justice, this Court finds that this claim is procedurally barred and Petitioner is not entitled to relief.

13-cv-1457-BTM (WVG)

1        2. <u>Merits</u>

2        Relief on this unexhausted and procedurally defaulted IAC claim is also not

3   warranted for the further reason that "it is perfectly clear that [Petitioner] does not raise

4   even a colorable federal claim." <u>Cassett</u>, 406 F.3d at 614; 28 U.S.C. § 2254(b)(2). Petitioner

5   alleges that he provided letters to trial counsel showing that "several people made false

6   claims [or] recanted outright!" (Doc. No. 3 at 8-9.) Petitioner claims that his counsel "never

7   [used]... the [investigators] or interviewed one and heard or spoke that I was not the actual

8   suspect.  All this said information was discarded and not allowed to enter said trial or prelim

9   [sic] after repeated [requests] to counsel that said it was unimportant."  (Doc. No. 3 at 9.)

10       The clearly established Supreme Court standard for ineffective assistance of counsel

11  claims  requires a habeas petitioner to establish two prongs: (1) that counsel's performance

12  fell below an objective standard of reasonableness, under prevailing norms of practice, and

13  (2) that the defendant was prejudiced, in the sense that he would have received a more

14  favorable result but for counsel's unprofessional errors.  <u>Strickland</u>, 466 U.S. at 687.

15  Further, <u>Strickland</u> requires that "[j]udicial scrutiny of counsel's performance... be highly

16  deferential." <u>Id.</u> at 689.  There is a "strong presumption that counsel's conduct falls within

17  a wide range of reasonable professional assistance."  <u>Id.</u> at 686-87.

18       To prevail on an ineffective assistance of counsel claim, a petitioner must make a

19  sufficient factual showing to substantiate the claims. <u>United States v. Schaflander</u>, 743 F.2d

20  714, 721 (9th Cir. 1984). A petitioner is not entitled to habeas relief based solely on

21  conclusory allegations which are unsupported by a statement of specific facts.  <u>James v.</u>

22  <u>Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994). Vague and speculative assertions of counsel's

23  ineffectiveness are insufficient. <u>United States v. Taylor</u>, 802 F.2d 1108, 1119 (9th Cir.

24  1986). Furthermore, in order to show ineffective assistance of counsel based on the failure

25                                        21

26                                                        13-cv-1457-BTM (WVG)

27

28

to call witnesses, the defendant must show that the particular witness was willing to testify, what his or her testimony would have been, and that his or her testimony would have been sufficient to create a reasonable doubt as to guilt.  See Alcala v. Woodford, 334 F.3d 862, 872-73 (9th Cir. 2003) (indicating that, to succeed on a claim of ineffective assistance of counsel based upon a failure to call witnesses, a habeas petitioner not only must identify the witness in question but also must describe specifically the testimony those witnesses would have given and how such testimony would have altered the trial's outcome); Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir.), amended by 253 F.3d 1150 (2001) (petitioner's mere speculation that, had a witness been interviewed, he might have given helpful information, is not enough to establish ineffective assistance); United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988); see also Dow v. Woods, 211 F.3d 480, 486 (9th Cir. 2000) (rejecting an ineffective assistance of counsel claim based on trial counsel's failure to interview or call an alibi witness when there was no evidence that this witness would have testified favorably for the defense); United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987); Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990).

Petitioner's IAC claim, as presented, is wholly deficient. Petitioner has not identified the witness or witnesses who could have testified or described the exculpatory testimony they could have provided. An independent review of the record, however, indicates that Petitioner believes that an individual named Cesar Sidon can prove that Petitioner did not kill Hardoy. (Doc. No. 22-18, at 18.) Nevertheless, Petitioner has not demonstrated that Sidon or any other witnesses with exculpatory information were available and willing to testify on his behalf at trial. Petitioner has not provided or even described the letters, whether from Sidon or anyone else, that he says prove that certain people made false claims or recanted. Petitioner has not submitted an affidavit from his trial counsel regarding his

22

knowledge of these letters. Petitioner has, in short, provided no detail whatsoever, and it is therefore "perfectly clear" that this ground for relief "does not raise even a colorable federal claim." Cassett, 406 F.3d at 614.

Because this claim is procedurally defaulted, and because it is perfectly clear that Petitioner does not raise even a colorable federal claim, this Court RECOMMENDS that this claim be DENIED WITH PREJUDICE.

## D.  Ground Four: Fifth Amendment Claim

In his fourth ground for relief, Petitioner argues that his Fifth and Sixth Amendment rights were violated when a videotaped statement he made to the police was shown to the jury and because he was forced to take the stand at trial to respond to that statement.  (Doc. No. 37 at 3.) Respondent argues that this claim is untimely and procedurally barred. Respondent also argues that the claim fails on the merits because Petitioner was advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), including his right to remain silent, and that he voluntarily waived those rights and spoke to the police.  (Lodgment No. 1 at 301-02.) Petitioner did not move to suppress this statement at trial or object to the admission of the DVD video of his interrogation.

### 1.  The AEDPA Statute of Limitations

This claim was asserted in the MTA, which was filed on August 19, 2014, and is therefore governed by AEDPA. As amended by the AEDPA, 28 U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

>> (A) the date on which the judgement became final by the conclusion of direct review or the expiration of the time for seeking such review;

23

13-cv-1457-BTM (WVG)

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In this case, Petitioner has not asserted that his filing of this claim was impeded "by State action in violation of the Constitution or law of the United States." 28 U.S.C. § 2244(d)(1)(B). This claim is also not premised on a newly recognized constitutional right and does not rely on a factual predicate that could not have been discovered during the pendency of Petitioner's direct appeal. 28 U.S.C. § 2244(d)(1)(C)-(D). Accordingly, the statute of limitations on this claim began to run on the date that Petitioner's conviction became final on direct review.

Unless a prisoner files a petition for writ of certiorari in the Supreme Court, his conviction becomes final on the first non-holiday weekday ninety days after the state supreme court denies the prisoner relief. Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 2002). In this case, the California Supreme Court denied Petitioner's petition for review on

24

13-cv-1457-BTM (WVG)

December 19, 2012, and Petitioner's conviction became final 90 days later, on March 19, 2013. (Lodgment No. 7.)

Petitioner did not file the MTA, which contained this claim, until August 4, 2014, some five months after the expiration of the limitations period. (Doc. No. 37.)  Petitioner's claim is therefore untimely unless Petitioner can establish that he is entitled to statutory tolling under 28 U.S.C. § 2244(d)(1), equitable tolling under Holland v. Florida, 560 U.S. 631 (2010), that the relation-back doctrine applies to this claim, Mayle v. Felix, 545 U.S. 644, 657 (2005), or that failure to consider this claim will result in a fundamental miscarriage of justice, McQuiggin v. Perkins, 133 S.Ct. 1924, 1934 (2013).

Petitioner is not entitled to statutory tolling of this claim.  AEDPA provides for tolling of the its one year statute of limitations for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The pendency of a federal habeas petition, however, does not trigger statutory tolling under 28 U.S.C. § 2244(d)(2). Duncan v. Walker, 533 U.S. 167, 181-82 (2001). Nothing in the record before this Court indicates that Petitioner has ever filed an application for collateral review in the state courts. Therefore, Petitioner is not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2).

Nor is Petitioner entitled to equitable tolling. "[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." Holland, 560 U.S. at 655 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Under circuit precedent, "equitable tolling is available … only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010) (emphasis in original). Petitioner's only explanation for his

delayed filing of this claim is his assertion that he is "special ed" and has difficulty with reading and spelling. However, "[l]ow literacy levels, lack of legal knowledge, and need for some assistance to prepare a habeas petition are not extraordinary circumstances to warrant equitable tolling." Baker v. California Dept. of Corrections, 484 Fed.Appx. 130, 131 (9th Cir. 2012). Moreover, Petitioner's claim that he was unable to file this claim in a timely fashion because of his self-declared "special ed" status is undermined by the fact that Petitioner did file a timely habeas petition in this Court containing the grounds for relief already discussed. Petitioner's failure to bring forward the additional claims presented in the MTA until after the expiration of the limitations period bespeaks a lack of diligence, not a lack of ability. Accordingly, "Petitioner's unsupported allegation that he had a learning disability that prevented him from filing sooner does not establish 'extraordinary circumstances' justifying equitable tolling." Whitney v. Hedgpeth, 2009 WL 3194085 *12 (S.D. Cal., Sept. 29, 2009).

This claim also does not satisfy the relation-back doctrine. Under Rule 15(c)(2) of the Federal Rules of Civil Procedure, made applicable to habeas corpus proceedings by 28 U.S.C. § 2242, an amendment relates back to the date of the original pleading when the claim asserted in the amended pleading and the claim asserted in the original pleading "arose out of the same conduct, transaction, or occurrence." In the habeas corpus context, new claims asserted in an amended pleading will relate back "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." Mayle, 545 U.S. at 657. Petitioner's Fifth Amendment claim, which is based on an alleged Miranda violation at Petitioner's interrogation, does not arise from the same core facts as any of the claims timely asserted in the FAP, each of which concerned the

13-cv-1457-BTM (WVG)

1  actions of the attorneys and the court during Petitioner's trial. This claim therefore does

2  not relate back to the date of the FAP.

3        Finally, application of the statute of limitations to bar review of this claim would not

4  result in a fundamental miscarriage of justice. The fundamental miscarriage of justice

5  exception to the statute of limitations is only available where the prisoner makes "a credible

6  showing of actual innocence," Mcquiggin, 133 S.Ct. at 1931, by showing that "it is more

7  likely than not that no reasonable juror would have convicted him in the light of the new

8  evidence, id. at 1935 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). In the claim

9  currently under review, Petitioner challenges the admission into evidence of his video-

10 taped statement. Even assuming that the admission of the video-tape was error, however,

11 Petitioner does not come close to meeting the stringent miscarriage of justice standard.

12 Notably, Petitioner's video-taped statement did not include a confession to the murder and

13 this Court's review of the transcript of Petitioner's trial indicates that Petitioner's

14 conviction rested on other direct and circumstantial evidence adduced at trial. Accordingly,

15 it cannot be said that the constitutional violation asserted here resulted in the conviction of

16 one who was actually innocent.

17       For these reasons, the Court finds that AEDPA's statute of limitations bars relief on

18 Petitioner's Fifth Amendment claim.

19                         2.  This Claim is Procedurally Barred

20       Petitioner never presented this claim to the California courts and therefore has failed

21 to exhaust his state remedies in regard to this claim as required by 28 U.S.C. §

22 2254(b)(1)(A). Indeed, no California court has ever ruled on this claim, because Petitioner

23 did not move to suppress his statement or object to the admission of the DVD video of his

24 interrogation. A return to state court, however, would be barred by California's rule against

25

26

27

28

27

13-cv-1457-BTM (WVG)

untimely petitions. <u>Robbins</u>, 18 Cal.4th at 780. This claim is therefore deemed technically exhausted but procedurally defaulted. <u>Gray</u>, 518 U.S. at 162; <u>Casey</u>, 386 F.3d at 920. As discussed in section IV(C)(1), above, at pages 16-18, Petitioner has not shown cause for his default and prejudice or that failure to review this claim will cause a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750. This claim is therefore procedurally barred, and, for this reason, should be denied.

### 3. <u>Merits</u>

The Court has addressed the merits of Petitioner's other unexhausted claims because a district court may deny even an unexhausted claim on the merits when "it is perfectly clear that [Petitioner] does not raise even a colorable federal claim." <u>Cassett</u>, 406 F.3d at 614. In this ground for relief, Petitioner claims that his Fifth Amendment rights were violated when the prosecution played to the jury a DVD video of his custodial interview that was obtained contrary to Petitioner's specific request that the recording device be turned off. This claim is quite clearly untimely and procedurally barred, not least because Petitioner did not object at trial to the admission of the DVD. Procedural defects aside, however, the Court is not able to say that it is "perfectly clear" that this claim lacks merit. <u>See</u> <u>Arnold v. Runnels</u>, 421 F.3d 859 (9th Cir. 2005) (holding that a suspect's unambiguous statement that he does not want the interrogation to be recorded "preclude[s] the interrogator from turning on the tape during the interrogation."); <u>Hurd v. Terhune</u> 619 F.3d 1080, 1088 (9th Cir. 2010) ("[C]learly established law allows a suspect to refuse to be interviewed in a particular manner even if he has already waived that right with respect to the subject matter of the interrogation").

28

13-cv-1457-BTM (WVG)

Nevertheless, as discussed above, this claim is barred by AEDPA's statute of limitations and is procedurally defaulted. This Court therefore RECOMMENDS that this claim be DENIED WITH PREJUDICE.

### E.  Ground Five: Ineffective Assistance of Appellate Counsel

Next, Petitioner claims that his appellate attorney was ineffective for not raising the claims asserted in Ground Four.  (Doc. No. 37 at 6.)  Respondent argues that this claim is untimely under AEDPA, procedurally defaulted, and meritless because counsel is not ineffective for failing to present a futile argument.

#### 1.  The AEDPA Statute of Limitations

This claim was asserted in the MTA, which was filed on August 19, 2014, and is therefore governed by AEDPA's one year statute of limitations. Because Petitioner does not assert that his filing of this claim was impeded by unlawful state action and because Petitioner's claim is not based on a newly recognized constitutional right or recently discovered facts, the limitations period on this claim started to run March 19, 2013, the date on which Petitioner's conviction became final on direct appeal. Petitioner filed this claim on August 19, 2014, five months after the statute of limitations expired. This claim will therefore be deemed untimely unless Petitioner demonstrates an entitlement to statutory or equitable tolling, that the claim relates back to a timely asserted claim, or that failure to review this claim will result in a fundamental miscarriage of justice. Petitioner has not made any such showing. Petitioner is not entitled to statutory tolling for the simple reason that Petitioner never presented this or any other claim in a state court application for collateral review. Petitioner is not entitled to equitable tolling because he has failed to show that "extraordinary circumstances beyond [his] control [made] it impossible to file a petition on time." Bills, 628 F.3d at 1097; Baker, 484 Fed.Appx. at 1031. This IAC claim

13-cv-1457-BTM (WVG)

also does not relate back to the date of the IAC claim timely asserted in the FAP because it arises from alleged deficiencies in the performance of Petitioner's counsel on direct appeal whereas the earlier IAC claim arises from alleged deficiencies in the performance of Petitioner's trial counsel. This claim is therefore "separate in 'both time and type'" from IAC claim asserted in the FAP and the relation back doctrine does not apply. <u>Mayle</u>, 545 U.S. at 657. Finally, as discussed below, this claim is without merit, and so failure to consider this claim will not result in a fundamental miscarriage of justice. Accordingly, none of the statutory or equitable exceptions to the one year statute of limitations apply and this claim must be deemed untimely.

### 2. Procedural Default

Petitioner never presented this claim to the California courts and therefore has failed to exhaust his state remedies in regard to this claim as required by 28 U.S.C. § 2254(b)(1)(A). A return to state court, however, would now be barred by California's rule against untimely petitions. <u>Robbins</u>, 18 Cal.4th at 780. This claim is therefore deemed technically exhausted but procedurally defaulted. <u>Gray</u>, 518 U.S. at 162; <u>Casey</u>, 386 F.3d at 920. As discussed in section IV(C)(1), Petitioner has not shown cause for his default and prejudice or that failure to review this claim will cause a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750. This claim is therefore procedurally barred and relief is not warranted.

### 3. Merits

Relief on this procedurally defaulted and untimely IAC claim is also not warranted for the additional reason that "it is perfectly clear that [Petitioner] does not raise even a colorable federal claim." <u>Cassett</u>, 406 F.3d at 614; 28 U.S.C. § 2254(b)(2). Petitioner argues that his appellate counsel was ineffective for not arguing that his right against self-

incrimination was violated when his videotaped statement was played for the jury. (Doc. No. 37 at 6.) Respondent counters that counsel is not ineffective for failing to present a meritless argument. (Doc. No. 60 at 20.)

The due process clause of the Fourteenth Amendment guarantees a criminal defendant the right to the effective assistance of counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 396 (1985); Miller v. Keeney, 882 F.2d 1428, 1431 (9th Cir. 1989). Claims that appellate counsel rendered ineffective assistance are evaluated using the two pronged Strickland analysis. Smith v. Robbins, 528 U.S. 259, 285 (2000). The party challenging the performance of appellate counsel must first show that appellate counsel performed deficiently by unreasonably failing to discover and assert nonfrivolous issues. Id. Second, the party seeking relief must show that he has suffered prejudice, which, in this context, means that his appeal would more likely than not have been granted had his attorney's performance not been deficient. Id. Appellate counsel is not deficient simply because he or she declines to brief every conceivable claim of error. Miller, 882 F.2d at 1434. Indeed, "the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." Id. And, of course, "the failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." Shah, 878 F.2d at 1162.

In this case, the failure of Petitioner's appellate counsel to assert that Petitioner was compelled to testify against himself in violation of his Fifth and Sixth Amendment rights does not raise a colorable IAC because Petitioner forfeited this argument by failing to object to the admission into evidence of the video tape. See Cal. Evid. Code § 353 ("A verdict or finding shall not be set aside … by reason of the erroneous admission of evidence unless … [t]here appears of record an objection to or a motion to exclude or to strike the

31

13-cv-1457-BTM (WVG)

evidence that was timely made and so stated as to make clear the specific ground of the objection or motion.”); see also People v. Partida, 37 Cal.4th 428, 433-35 (2005). This failure to raise the issue with the trial court precluded Petitioner's appellate counsel from raising the issue on appeal. Because the failure to raise a futile argument on appeal does not constitute ineffective assistance of counsel, this claim is wholly without merit.[4]

Because this IAC claim is untimely under AEDPA, procedurally defaulted, and because it is perfectly clear that this ground for relief does not raise a colorable federal claim, this Court accordingly RECOMMENDS that this claim be DENIED WITH PREJUDICE.

### F.  Ground Six: Ineffective Assistance of Trial Counsel

Next, Petitioner argues that his counsel was ineffective for failing to make use of documents showing that he suffered a stroke when he was eight years old. (Doc. No. 37 at 6.)  This claim was raised for the first time in the MTA, and the medical records in question are attached to that document. (Doc. No. 37 at 29-70.) Respondent argues that this claim is untimely and procedurally barred. Respondent also argues that this claim fails on the merits because Petitioner did not show that he was affected by this medical condition at the time of the murder and because Petitioner did not show that his trial counsel's decision not to present evidence of Petitioner's childhood medical condition was anything other than a reasonable strategic choice. (Doc. No. 60 at 20.)

---

[4] The only vehicle for appellate counsel to have raised this issue would have been through an IAC claim. Appellate counsel did not do so, and Petitioner does not challenge that decision. Even if this Court construed Petitioner's IAC claim to reach the failure of appellate counsel to assert an IAC claim in regard to trial counsel's failure to object to the admission of the video tape, relief would not be warranted because this IAC claim would be both untimely and procedurally barred.

13-cv-1457-BTM (WVG)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 1.  The AEDPA Statute of Limitations

As this claim was asserted in the MTA, filed on August 19, 2014, it is governed by AEDPA's one year statute of limitations. Because Petitioner does not assert that his filing of this claim was impeded by unlawful state action and because Petitioner's claim is not based on a newly recognized constitutional right or recently discovered facts, the limitations period on this claim started to run March 19, 2013, the date on which Petitioner's conviction became final on direct appeal. Petitioner filed this claim on August 19, 2014, five months after the statute of limitations expired. This claim will therefore be deemed untimely unless Petitioner demonstrates an entitlement to statutory or equitable tolling, that the claim relates back to a timely asserted claim, or that failure to review this claim will result in a fundamental miscarriage of justice. Petitioner makes no such showing. Petitioner is not entitled to statutory tolling because Petitioner never presented this or any other claim in a state court application for collateral review. Petitioner is not entitled to equitable tolling because he has failed to show that "extraordinary circumstances beyond [his] control [made] it impossible to file a petition on time." Bills, 628 F.3d at 1097; Baker, 484 Fed.Appx. at 1031. This IAC claim also does not relate back to the date of the IAC claim timely asserted in the FAP. That IAC claim centered on trial counsel's failure to make use of letters purportedly showing that witnesses had recanted or offered false testimony, while this IAC claim centeres on trial counsel's failure to seek the admission of evidence relating to Petitioner's medical condition. This claim is therefore "separate in 'both time and type'" from IAC claim asserted in the FAP and the relation back doctrine does not apply. Mayle, 545 U.S. at 657. Finally, as discussed below, this claim is without merit, and so failure to consider this claim will not result in a fundamental miscarriage of justice. Accordingly, none of the statutory or equitable exceptions to the one year statute

33

1  of limitations apply and this claim must be deemed untimely and therefore denied.

2          2. <u>Procedural Default</u>

3          Petitioner never presented this claim to the California courts and therefore has failed

4  to exhaust his state remedies in regard to this claim as required by 28 U.S.C. §

5  2254(b)(1)(A). A return to state court, however, would now be barred by California's rule

6  against untimely petitions. <u>Robbins</u>, 18 Cal.4th at 780. This claim is therefore deemed

7  technically exhausted but procedurally defaulted. <u>Gray</u>, 518 U.S. at 162; <u>Casey</u>, 386 F.3d

8  at 920. As discussed in section IV(C)(1), above, at pages 16-18, Petitioner has not shown

9  cause for his default and prejudice or that failure to review this claim will cause a

10  fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750. This claim is therefore

11  procedurally barred and should be denied.

12          3. <u>Merits</u>

13          This procedurally defaulted and untimely IAC claim should also be denied for the

14  additional reason that "it is perfectly clear that [Petitioner] does not raise even a colorable

15  federal claim." <u>Cassett</u>, 406 F.3d at 614; 28 U.S.C. § 2254(b)(2).

16          The clearly established Supreme Court standard for ineffective assistance of counsel

17  claims requires a habeas petitioner to establish (1) that counsel's performance fell below

18  an objective standard of reasonableness, under prevailing norms of practice, and (2) that

19  the defendant was prejudiced, in the sense that he would have received a more favorable

20  result but for counsel's unprofessional errors. <u>Strickland</u>, 466 U.S. at 687. Further,

21  <u>Strickland</u> requires that "[j]udicial scrutiny of counsel's performance ... be highly

22  deferential." <u>Id.</u> at 689. There is a "strong presumption that counsel's conduct falls within

23  a wide range of reasonable professional assistance." <u>Id.</u> at 686-87. "[S]trategic choices

24  

25                                         34

26                                         13-cv-1457-BTM (WVG)

27  

28

made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690.

Petitioner claims that his counsel should have made use of documents showing that he suffered a childhood stroke. This claim has no merit. First, Petitioner has not articulated any ground for the relevance and admissibility of these medical records and has not suggested how these medical records would have assisted him at trial. Notably, Petitioner did not offer a mental defense at trial, and the decision not to offer such a defense is precisely the kind of strategic decision that is entrusted to the reasonable discretion of trial counsel. See Knowles v. Mirzayance, 556 U.S. 111, 124 (2009).

Second, this Court's own review of the record indicates that Petitioner's childhood stroke was indeed raised during Petitioner's trial and that medical records relating to this stroke were lodged with the trial court prior to sentencing. To the point, Petitioner's trial testimony on direct examination began with a discussion of how the stroke that he suffered at age eight had affected his life, including how Petitioner "had to be in special ed" and "had to learn how to walk, talk … had to learn everything over again." (Doc. No. 22-14, p. 82.) Petitioner's trial counsel also filed medical records documenting Petitioner's childhood stroke with the clerk prior to sentencing. (Doc. No. 22-18, p. 14). In any event, the sentence imposed on Petitioner for his conviction of murder in the first degree was mandatory, Cal. Penal Code section 190(a), so any further work that Petitioner's trial counsel may have done to investigate Petitioner's medical condition as a mitigating factor would have been futile. This IAC claim accordingly has no merit.

Because this claim is untimely under AEDPA and procedurally defaulted, and because it is perfectly clear that Petitioner does not raise even a colorable federal claim, this Court RECOMMENDS that this claim be DENIED WITH PREJUDICE.

35

13-cv-1457-BTM (WVG)

1

### G.  Ground Seven: Admission of Petitioner's Out-of-Court Statements

2   Next, Petitioner argues that statements he made to witness Homero Hernandez were

3   inadmissible hearsay. (Doc. No. 37 at 8.)  Respondent argues that this claim is untimely

4   and procedurally barred. Respondent also argues that this claim asserts only a state law

5   error and is therefore not cognizable under AEDPA.

6   ### 1.  The AEDPA Statute of Limitations

7   This claim was asserted in the MTA, which was filed on August 19, 2014, and is

8   therefore governed by AEDPA's one year statute of limitations. Because Petitioner does

9   not assert that his filing of this claim was impeded by unlawful state action and because

10  Petitioner's claim is not based on a newly recognized constitutional right or recently

11  discovered facts, the limitations period on this claim started to run March 19, 2013, the

12  date on which Petitioner's conviction became final on direct appeal. Petitioner filed this

13  claim on August 19, 2014, five months after the statute of limitations expired. This claim

14  will therefore be deemed untimely unless Petitioner demonstrates an entitlement to

15  statutory or equitable tolling, that the claim relates back to a timely asserted claim, or that

16  failure to review this claim will result in a fundamental miscarriage of justice. Petitioner

17  has not made any such showing. Petitioner is not entitled to statutory tolling as Petitioner

18  never presented this or any other claim in a state court application for collateral review.

19  Petitioner is not entitled to equitable tolling because he has failed to show that

20  "extraordinary circumstances beyond [his] control [made] it impossible to file a petition on

21  time." Bills, 628 F.3d at 1097; Baker, 484 Fed.Appx. at 1031. This claim is also "separate

22  in 'both time and type'" from the claims, including the evidentiary claims, asserted in the

23  FAP, and the relation back doctrine accordingly does not apply. Mayle, 545 U.S. at 657.

24  Finally, as discussed below, this claim is wholly without merit, and so failure to consider

25

26

27  13-cv-1457-BTM (WVG)

28

this claim will not result in a fundamental miscarriage of justice. Accordingly, none of the statutory or equitable exceptions to the one year statute of limitations apply and this claim must be deemed untimely and should be denied.

### 2. Procedural Default

Petitioner never presented this claim to the California courts and therefore has failed to exhaust his state remedies in regard to this claim as required by 28 U.S.C. § 2254(b)(1)(A). A return to state court, however, would now be barred by California's rule against untimely petitions. Robbins, 18 Cal.4th at 780. This claim is therefore deemed technically exhausted but procedurally defaulted. Gray, 518 U.S. at 162; Casey, 386 F.3d at 920. As discussed in section IV(C)(1), above, at pages 16-18, Petitioner has not shown cause for his default and prejudice or that failure to review this claim will cause a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. This claim is therefore procedurally barred and should be denied.

### 3. Merits

Relief on this procedurally defaulted and untimely IAC claim is also not warranted for the additional reason that "it is perfectly clear that [Petitioner] does not raise even a colorable federal claim." Cassett, 406 F.3d at 614; 28 U.S.C. § 2254(b)(2). Petitioner contends that the statements he made to Hernandez were hearsay inadmissible under Evidence Code section 1200. Petitioner also cites the Sixth and Fourteenth Amendments. Petitioner does not elaborate on his constitutional claims, but his citation to People v. Thomas, 53 Cal.4th 771 (2012), alerts the Court to the presence of a claim that the admission of this evidence violated his rights under the Confrontation Clause of the Sixth Amendment.

13-cv-1457-BTM (WVG)

As Respondent correctly notes, state law evidentiary error is not cognizable on federal habeas corpus. Petitioner's claim that Hernandez's testimony regarding Petitioner's out-of-court statement was inadmissible hearsay under Evidence Code section 1200 is a classically state law claim and, as such, is not one on which a federal habeas court may grant relief.[5] Petitioner's Confrontation Clause claim also fails as a criminal defendant's own out-of-court statements are not testimonial and do not implicate the Confrontation Clause. See United States v. Crowe, 563 F.3d 969, 976 n. 12 (9th Cir. 2009); see also United States v. Spencer, 592 F.3d 866, 878 (8th Cir. 2010). Finally, to the extent that Petitioner's citation to the Fourteenth Amendment raises a due process claim, such a claim has no basis and is rejected.

Because this claim is untimely under AEDPA and procedurally defaulted, and because it is perfectly clear that this ground for relief does not raise even a colorable federal claim, this Court RECOMMENDS that this claim be DENIED WITH PREJUDICE.

## H.   Ground Eight: Arbitrary and Discriminatory Prosecution

In his final claim, Petitioner asserts that he has been subjected to arbitrary and discriminatory prosecution in violation of the equal protection clause of the Fourteenth Amendment. (Doc. No. 37 at 9.) Respondent argues that this claim is untimely and procedurally barred. Respondent also asserts that this claim fails on the merits because Petitioner failed to meet his burden of proving this claim by a preponderance of evidence. (Doc. No. 60 at 22-23.)

---

[5] Petitioner's statement to Hernandez was, in any case, the admission of a party, and therefore was admissible under Evidence Code section 1220.

38

### 1.   The AEDPA Statute of Limitations

This claim was asserted in the MTA, which was filed on August 19, 2014, and is therefore governed by AEDPA's one year statute of limitations. Because Petitioner does not assert that his filing of this claim was impeded by unlawful state action and because Petitioner's claim is not based on a newly recognized constitutional right or recently discovered facts, the limitations period on this claim started to run March 19, 2013, the date on which Petitioner's conviction became final on direct appeal. Petitioner filed this claim on August 19, 2014, five months after the statute of limitations expired. This claim will therefore be deemed untimely unless Petitioner demonstrates an entitlement to statutory or equitable tolling, that the claim relates back to a timely asserted claim, or that failure to review this claim will result in a fundamental miscarriage of justice. Petitioner has not made any such showing. Petitioner is not entitled to statutory tolling as Petitioner never presented this or any other claim in a state court application for collateral review. Petitioner is not entitled to equitable tolling because he has failed to show that "extraordinary circumstances beyond [his] control [made] it impossible to file a petition on time." Bills, 628 F.3d at 1097; Baker, 484 Fed.Appx. at 1031. This claim is also does not relate back to any claim timely asserted in the FAP as it is "separate in 'both time and type'" from those claims. Mayle, 545 U.S. at 657. Finally, as discussed below, this claim is wholly without merit, and so failure to consider this claim will not result in a fundamental miscarriage of justice. Accordingly, none of the statutory or equitable exceptions to the one year statute of limitations apply and this claim must be deemed untimely.

### 2.   Procedural Default

Petitioner never presented this claim to the California courts and therefore has failed to exhaust his state remedies in regard to this claim as required by 28 U.S.C. §

13-cv-1457-BTM (WVG)

2254(b)(1)(A). A return to state court, however, would now be barred by California's rule against untimely petitions. <u>Robbins</u>, 18 Cal.4th at 780. This claim is therefore deemed technically exhausted but procedurally defaulted. <u>Gray</u>, 518 U.S. at 162; <u>Casey</u>, 386 F.3d at 920. As discussed in section IV(C)(1), above, at pages 16-18, Petitioner has not shown cause for his default and prejudice or that failure to review this claim will cause a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750. This claim is therefore procedurally barred.

### 3. <u>Merits</u>

Relief on this procedurally defaulted and untimely equal protection claim is also not warranted for the additional reason that "it is perfectly clear that [Petitioner] does not raise even a colorable federal claim." <u>Cassett</u>, 406 F.3d at 614; 28 U.S.C. § 2254(b)(2). Petitioner claims that his prosecution was arbitrary and discriminatory. As Respondent points out, however, Petitioner has offered no evidence that the decision to prosecute him was based on an illegitimate motive.

The government has "broad discretion" to decide whom to prosecute. <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985). "[S]o long as a prosecutor has probable cause to believe that the accused committed a crime defined by statute, the decision whether or not to prosecute … generally rests entirely in [the prosecutor's] discretion. <u>Bodenkircher v. Hayes</u>, 434 U.S. 357, 364 (1978).  Nevertheless, selectivity in the enforcement of criminal laws is subject to constitutional constraints, including those of the the Equal Protection Clause of the Fourteenth Amendment.  <u>See</u> <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996); <u>see</u> <u>also</u> <u>Yick Wo v. Hopkins</u>, 118 U.S. 356, 373-74 (1886). To demonstrate impermissible discriminatory or selective prosecution, the petitioner must demonstrate that

40

others similarly situated have not been prosecuted and that the prosecution is based on an impermissible motive. <u>Armstrong</u>, 517 U.S. at 565.

Petitioner offers no evidence that the decision to prosecute him was based on anything other than the considerable direct and circumstantial evidence of his guilt that was adduced at trial. Petitioner does not identify an illegitimate motive underlying his prosecution, much less point to evidence showing that similarly situated persons have not been prosecuted. In short, Petitioner's claims of arbitrary and discriminatory prosecution are entirely conclusory and without merit.

Because this claim is untimely under AEDPA and procedurally defaulted, and because it is perfectly clear that this ground for relief does not raise even a colorable federal claim, this Court RECOMMENDS that this claim be DENIED WITH PREJUDICE.

## V.   **CONCLUSION**

The Court submits this Report and Recommendation to United States District Judge Barry Ted Moskowitz under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d)(4) of the United States District Court for the Southern District of California.

Further, IT IS HEREBY RECOMMENDED that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered DENYING the Petition for Writ of Habeas Corpus WITH PREJUDICE.

IT IS ORDERED that no later than October 23, 2015, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than November 20, 2015. The parties are advised that failure to file objections within the specified time may waive the right to raise those

41

13-cv-1457-BTM (WVG)

1  objections on appeal of the Court's order. <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th

2  Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156 (9th Cir. 1991).

3  IT IS SO ORDERED.

4  Dated:  September 14, 2015

5

6                                            Hon. William V. Gallo
                                             United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                          42

26                                            13-cv-1457-BTM (WVG)

27

28